IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| OLIVIA COPE, on behalf of herself and all others similarly situated, known and unknown, | ) ) ) | |
| | ) | Case No. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| LET'S EAT OUT, INCORPORATED. d/b/a BUFFALO WILD WINGS | ) ) ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

### RULE 23 CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT

Plaintiff Olivia Cope, on behalf of herself and all other persons similarly situated, known and unknown, through her attorneys and for her Complaint against Defendant Let's Eat Out, Inc. ("Let's Eat") d/b/a Bufallo Wild Wings, states as follows:

**Nature of Plaintiff's Claims**

1.      This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500 *et seq.*, and Missouri common law for Defendant's failure to pay Plaintiff and other tipped employees all earned minimum wages.

2.      James Bruno owns franchised Buffalo Wild Wings ("BWW") restaurants in several states, including, but not limited to, Missouri, Alabama, Arkansas, and Nebraska. Mr. Bruno owns his BWW restaurants through several different corporations, including Defendant Let's Eat, Bruno Enterprises, Inc. Too, and Wing Backs, Inc.

3. Plaintiff and the persons they seek to represent are current and former tipped employees of Defendant Let's Eat and its affiliated companies working as servers and bartenders.

4. Defendant pays its tipped employees, including servers and bartenders, sub-minimum hourly wages under the tip-credit provisions of the FLSA and, in Missouri, the MMWL.

5. Under the tip-credit provisions of the FLSA, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum hourly wage and take a "tip credit" against its minimum wage obligations. But an employer is not permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA; (2) when it requires its tipped employees to perform non-tipped work that is **unrelated** to the employees' tipped occupation (*i.e.*, "dual jobs"); or (3) when it requires its tipped employees to perform non-tipped work that, although **related** to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek; or (4) when it requires tipped employees to return a portion of their tips to the employer. *See, e.g.,* 29 U.S.C. § 203(m) (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (Posner, J.) (explaining that when tipped employees perform "non-tipped duties" that "are **unrelated** to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work") (emphasis added); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend

2

'substantial time' (defined as more than 20 percent) performing *related* but nontipped duties should be paid at the full minimum wage for that time"); *Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (defendant not permitted to take the FLSA tip credit when it took plaintiffs' tips to pay for shortages and unpaid tabs).

6. Defendant willfully violated the violated the FLSA by paying its servers and bartenders sub-minimum, tip-credit rates of pay, while (1) failing to inform them of the tip-credit provisions of the FLSA; (2) regularly requiring them to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cleaning bathrooms, slicing fruit, washing dishes, portioning food items in the kitchen, sweeping, mopping, and/or deck scrubbing floors, and cleaning the restaurant; and (3) requiring them to reimburse Defendant from their tips for customer walkouts.

7. Under the MMWL, an employer may pay an "employee who receives *and retains* compensation in the form of gratuities in addition to wages" a rate of pay equal to "fifty percent" of the applicable minimum wage. Mo. Rev. Stat. § 290.512.1 (emphasis added).

8. Defendant violated the MMWL by enforcing a policy or practice of requiring tipped employees to reimburse the restaurant from their tips when customers walk out without paying their bills. This same conduct violated the Missouri common laws.

**The Parties**

9. Plaintiff resides in and is domiciled in Missouri.

10. Between approximately March 2013 and January 2016, Plaintiff was employed by Defendant at its BWW restaurant on East Battlefield Road in Springfield, Missouri. For approximately the first six to seven months of her employment, Plaintiff worked as a cashier.

3

After that, she worked as a server and, for the last five of six months of employment, she also worked as a bartender.

11. Defendant paid Plaintiff a sub-minimum hourly wage to work as a server and bartender, regardless of the job duties she was required to perform.

12. Plaintiff does not recall Defendant informing her of the tip-credit provisions of the FLSA.

13. While working as a server and bartender, Plaintiff spent more than 20 percent of her work time in one or more individual workweeks performing required duties where she did not interact with customers and could not earn a tip. Below is a non-exhaustive list of these duties:

- Cleaning bathrooms;
- Slicing lemons, limes, and/or oranges;
- Portioning ice cream and cake in the kitchen;
- Washing dirty glasses, cups, silverware, and/or food platters;
- Sweeping, mopping, and/or deck scrubbing restaurant floors;
- Cleaning drains;
- Rolling silverware;
- Dusting picture frames and fan blades;
- Cleaning the mop sink in the back of the house;
- Breaking down and cleaning the expo station;
- Breaking down and cleaning the dish cart;
- Emptying and cleaning salt and pepper shakers or refilling them after they

4

were clean;

- Removing cigarette butts from a sand-filled outdoor ashtray; and
- Cleaning windows.

14. In or around mid-to-late 2014, Plaintiff had customers she was serving at BWW leave the restaurant without paying their bill.

15. Defendant's management required Plaintiff to reimburse the restaurant for the cost of the unpaid bill from her tips, which she did.

16. Defendant Let's Eat is an Indiana corporation with its principal place of business in Springfield, Missouri.

17. Upon information and belief, Defendant Let's Eat is the corporation under which two of James Bruno's BWW restaurants operate in Missouri and Alabama operate, including the Battlefield location where Plaintiff worked.

18. The BWW restaurants owned by James Bruno, including those operated under Defendant Let's Eat and related corporations, including but not limited to Bruno Enterprises, Inc. Too, and Wing Backs, Inc., are engaged in related activities performed for a common business purpose, through unified operation or common control, including the use of common management employees, common payroll and human resources functions, and personnel policies and practices that are alleged herein to violate the FLSA and, at the Missouri locations, the MMWL and Missouri common law.

**Jurisdiction and Venue**

19. This Court has federal question jurisdiction over Plaintiff's FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

20. This Court has supplemental jurisdiction over Plaintiff's MMWL and Missouri common law claims pursuant to 28 U.S.C. § 1367.

21. Venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391.

**Rule 23 Class Action Allegations Under the MMWL and Missouri Common Law**

22. Plaintiff and the class she seeks to represent under the MMWL are current and former servers and bartenders working at any of James Bruno's BWW restaurants in Missouri, including but not limited the BWW restaurants operated under Defendant Let's Eat or Bruno Enterprises, Inc. Too, who, at any time in the two years before this Complaint is filed to the conclusion of this action, were paid sub-minimum, tip-credit rates of pay.

23. Under the MMWL, an employer may pay an "employee who receives *and retains* compensation in the form of gratuities in addition to wages" a rate of pay equal to "fifty percent" of the applicable minimum wage. Mo. Rev. Stat. § 290.512.1 (emphasis added).

24. Plaintiff and the class she seeks to represent under the Missouri common law unjust enrichment/quantum meruit claims are current and former servers and bartenders working at any of James Bruno's BWW restaurants in Missouri, including but not limited the BWW restaurants operated under Defendant Let's Eat or Bruno Enterprises, Inc. Too, who, at any time in the five years before this Complaint is filed to the conclusion of this action, were paid sub-minimum, tip-credit rates of pay.

25. Defendant has a policy or practice of requiring tipped employees to reimburse the restaurant from their tips when customers walk out without paying their bills, which violates the MMWL and the Missouri common law.

26. Plaintiff brings her MMWL and unjust enrichment/quantum meruit claims as a class action pursuant to Fed. R. Civ. P. 23 because the proposed class members are so numerous that joinder of all members is impracticable.

27. Plaintiff estimates that throughout the limitations period, Defendant has employed in excess of 100 tipped employees in its Missouri BWW restaurants.

28. The issues involved in this lawsuit present the following common questions of law and fact: (1) whether Defendant pays its tipped employees sub-minimum hourly wages; (2) whether Defendant required tipped employees to reimburse Defendant for customer walkouts; and (3) whether Defendant violated the MMWL and Missouri common law by requiring tipped employees to reimburse Defendant for customer walkouts.

29. The common questions of law and fact predominate over the variations which may exist between members of the class, if any.

30. The individual Plaintiff and the class of tipped employees on one hand, and Defendant on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages plus liquidated damages, attorneys' fees, interest and the cost of this lawsuit.

31. Plaintiff believes and asserts that she is able fairly and adequately to represent and protect the interests of the class because she worked as a tipped employee at Defendant's BWW restaurant and experienced the same practices that Plaintiff alleges violate the MMWL and Missouri common law. In addition, Plaintiff believes she can adequately represent the proposed class because she has engaged counsel that is highly experienced in large-scale wage and hour class and collective actions, like this one.

7

32. If individual actions were required to be brought by each of the similarly-situated persons injured or affected, it would necessarily result in multiplicity of lawsuits, creating a hardship to the individuals and to the Court, as well as to Defendant.

33. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

34. The books and records of Defendant are material to Plaintiff's action as they disclose the hours worked by each employee and the rate of pay for that work.

**Common Factual Allegations**

35. Buffalo Wild Wings restaurants, including those owned and operated by Defendant, operate as a chain concept, so that customers can obtain essentially the same food and drink items and experience the same customer service at all Buffalo Wild Wings restaurants.

36. Defendant trains its Buffalo Wild Wings employees, including servers, bartenders, and store managers, to perform the same, or essentially the same, job duties regardless of the location where they are assigned to work.

37. During Plaintiff's employment with Defendant, Defendant's Buffalo Wild Wings locations shared managers. That is, the same managers worked at multiple restaurant locations at different times.

38. During Plaintiff's employment, Defendant permitted servers to transfer between its Buffalo Wild Wings restaurants.

39. Defendant requires their servers and bartenders to perform non-tipped work each shift in addition to serving customers.

8

40. During Plaintiff's employment, checklists were posted in Defendant's restaurant with numerous non-tipped duties that servers and bartenders were required to perform in addition to serving customers.

41. During Plaintiff's employment, managers verified that servers and bartenders performed the non-tipped work covered in the checklists described in the previous paragraph.

42. When Plaintiff and other servers and bartenders performed non-tipped work, they did not interact with customers and did not have the opportunity to earn tips.

43. Defendant requires certain servers and bartenders to perform non-tipped work before their restaurants are open to customers.

44. Defendant requires servers and bartenders to perform non-tipped work after they are finished serving customers and/or after their restaurants are closed to customers.

45. During Plaintiff's employment, Defendant had no policies prohibiting servers and bartenders from performing certain types, or excessive amounts, of non-tipped work.

46. During Plaintiff's employment, Defendant did not record or track the amount of time Tip-Credit Employees spent performing non-tipped work.

47. Defendant used a standard point-of-sale system to record hours worked by Plaintiff and other servers and bartenders at its Buffalo Wild Wings restaurants.

48. Defendant analyzes and evaluates information collected by its point-of-sale system, including labor cost information for each of its restaurants.

49. Defendant's managers at the restaurants are eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets.

50. In its point-of-sale system, Defendant can create different "clock in" codes that would allow their servers and bartenders to clock in at the full minimum wage rate when

9

performing non-tipped work, while clocking in at a sub-minimum, tip-credit wage rate when serving customers.

51. Defendant did not allow its servers and bartenders to clock in at the full minimum wage rate when performing the non-tipped work described in this Complaint, although Defendant had the capacity to do so.[1]

## COUNT I
### Violation of the Missouri Minimum Wage Act – Minimum Wages
### Class Action
### (Missouri BWW Restaurants)

52. Plaintiff re-alleges and incorporates the foregoing paragraphs of this Complaint as if stated in this Count I.

53. This Count I arises from Defendant's violation of the MMWL for its failure to pay minimum wages to Plaintiff and members of the proposed class of tipped employees.

54. Plaintiff was an "employee" of Defendant as defined by the MMWL, Mo. Rev. Stat. § 290.500(3).

55. Defendant was Plaintiff's "employer[s]" as defined in the MMML, Mo. Rev. Stat. § 290.500(4).

56. During her employment by Defendant, Plaintiff and other members of the proposed class were not exempt from the minimum wage provisions of the MMWL.

---

[1] On information and belief, within approximately the final two months of Plaintiff's employment, Defendant may have started allowing servers to clock in under a full minimum wage job code if they were assigned to close the restaurant and needed at least one hour to complete their closing tasks after they finished serving customers. Plaintiff does not recall ever clocking in at the full minimum wage job code to perform her non-tipped work as a server and bartender.

10

57. Defendant paid Plaintiff and other members of the proposed class sub-minimum hourly rates of pay, despite requiring them to reimburse Defendant from their tips for customer walkouts, in violation of the MMWL. Mo. Rev. Stat. § 290.512.1

WHEREFORE, Plaintiff and the proposed class of tipped employees pray for judgment against Defendant as follows:

    A.    Owed minimum wages for all hours worked;

    B.    Liquidated damages pursuant to Mo. Rev. Stat. § 290.527 equal to the amount of unpaid minimum wages;

    C.    Attorneys' fees and costs pursuant to Mo. Rev. Stat. § 290.512; and

    D.    Such other and further relief as this Court deems just and proper.

## COUNT II
### Violation of the Missouri Common Law Unjust Enrichment/Quantum Meruit – Minimum Wages
### Class Action

58. Plaintiff re-alleges and incorporates the foregoing paragraphs of this Complaint.

59. Plaintiff and the other members of the proposed class conferred a benefit upon Defendant by working for sub-minimum wage rates of pay and requiring them to reimburse Defendant from their tips for customer walkouts.

60. Defendant was aware that it was receiving the benefit of this sub-minimum wage work at the time the work was performed and the deductions made, and Defendant accepted and retained that benefit without paying fair compensation for the same

61. Defendant's acceptance and retention of the benefit of the Plaintiff's and the proposed class' sub-minimum wage labor and walkout deductions was inequitable and resulted in Defendant being unjustly enriched.

11

WHEREFORE, Plaintiff and the proposed class of tipped employees pray for judgment against Defendant as follows:

    a.    Owed minimum wages for all hours worked;

    b.    Disgorgement of the value of its ill-gained benefits;

    c.    Prejudgment and post-judgment interest as provided by law; and

    d.    Such other relief as this Court deems fair and equitable.

## COUNT III
### Violation of the Fair Labor Standards Act
### Collective Action

62.    Plaintiff re-alleges and incorporates the foregoing paragraphs of this Complaint

63.    This count arises from Defendant's violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for its failure to pay minimum wages to Plaintiff and similarly-situated tipped employees.

64.    Plaintiff brings this Count as a collective action. Plaintiff's consent form to act as a representative plaintiff is attached hereto as Exhibit A.

65.    Plaintiff was an "employee" of Defendant as defined by the FLSA. 29 U.S.C. § 203(d).

66.    Defendant was Plaintiff's "employer[s]" as defined by the FLSA. 29 U.S.C. § 203(d).

67.    Defendant is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

68.    Defendant's annual gross volume of sales made or business done has exceeded $500,000 in each of the last three calendar years, exclusive of excise taxes.

69. During her employment by Defendant, Plaintiff and similarly-situated tipped employees were not exempt from the minimum wage provisions of the FLSA.

70. Plaintiff and similarly-situated tipped employees were paid an hourly rate less than minimum wage to work as servers and bartenders for Defendant.

71. In one or more individual work weeks, Plaintiff's and similarly situated tipped employees' average compensation, excluding tips, fell below minimum wage.

72. An employer may pay a tipped employee less than minimum wage, that is, take a "tip credit," if the employee receives customer tips in an amount that, together with the sub-minimum wage, equal the minimum hourly wage. 29 U.S.C. § 203(m). The tip credit provision does not apply if the employer: (1) fails to inform the employee of the tip-credit provisions of the FLSA; (2) requires employees to perform improper types, or excessive amounts, of non-tipped work; or (3) requires employees to distribute any of their tips to the employer. 29 U.S.C. § 203(m); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014); (Posner, J.) (explaining that when tipped employees perform "non-tipped duties" that "are *unrelated* to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work") (emphasis added); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing *related* but nontipped duties should be paid at the full minimum wage for that time"); 29 C.F.R. § 531.56(e).

73. Defendant failed to inform Plaintiff or similarly-situated servers and bartenders of the tip-credit provisions of the FLSA.

13

74. Defendant regularly required Plaintiff and similarly-situated servers and bartenders to perform non-tipped duties that are unrelated to their tipped occupation, including but not limited to, cleaning bathrooms, slicing fruit, washing dishes, portioning food items in the kitchen, sweeping, mopping, and/or deck scrubbing floors, and cleaning the restaurant, while paying them tip-credit wages.

75. Defendant required Plaintiff and similarly situated servers and bartenders to perform non-tipped duties that, even if they were *related* to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

76. In addition, Defendant did not permit Plaintiff and similarly-situated tipped employees to retain all of their tips. Plaintiff and similarly-situated employees were required to reimburse Defendant from their tips when customers walked out of the restaurant without paying their bill.

77. Defendant's failure to comply with the minimum wage requirements of the FLSA regarding tip credit, and consequently, Plaintiff's failure to be paid minimum wage from Defendant's was a willful violation of the Act.

WHEREFORE, Plaintiff and similarly situated tipped employees pray for judgment against Defendant as follows:

    A. judgment in the amount of the owed minimum wages for all time worked;

    B. liquidated damages in an amount equal to the amount of unpaid minimum wages;

    C. reasonable attorneys' fees and costs incurred in prosecuting this action; and

    D. such other and further relief as this Court deems just and proper.

14

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a jury trial on all claims with respect to which she has the right to a jury.

Dated: February 10, 2016

Respectfully submitted,

**ROWDY MEEKS LEGAL GROUP LLC**

/s/ *Rowdy B. Meeks*
Rowdy B. Meeks, MO #48349
Rowdy Meeks Legal Group LLC
10601 Mission Rd, Suite 100
Leawood, Kansas 66206
Tel: (913) 766-5585
Fax: (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
www.rmlegalgroup.com

Douglas M. Werman*
Zachary C. Flowerree*
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
Phone: (312) 419-1008
Fax: (312) 419-1025

*pro hac vice* motions forthcoming

*Attorneys for Plaintiff*