# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| OLIVIA COPE, on behalf of herself and all others similarly situated, known and unknown, <br><br> Plaintiff, <br><br> v. <br><br> LET'S EAT OUT, INCORPORATED, d/b/a BUFFALO WILD WINGS, et al., <br><br> Defendants. | Case No. 6:16-cv-03050-SRB |

## **ORDER**

Before the Court is Defendants' Motion to Exclude Testimony of Expert Witness, Chester Hanvey, and Memorandum of Law. (Doc. #268). For the following reasons, the Motion is DENIED.

### I.  Background

On February 10, 2016, Plaintiff Olivia Cope sued Defendants for "failure to pay Plaintiff and other tipped employees all earned minimum wages." (Doc. #218, ¶ 1). Plaintiff brings a class action under Federal Rule of Civil Procedure 23, asserting claims under Missouri common law and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500 *et seq.*, and a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Among other claims, Plaintiff alleges Defendants violated both Missouri law and the FLSA based on Defendants' policy that bartenders and servers pay for customer walkouts and cash register shortages from their tips.

On August 30, 2017, Defendants "served interrogatories directed to all Rule 23 class members on Plaintiff's Counsel." (Doc. #268, p. 3; Doc. #186). Upon Plaintiff's counsel's

objection to propounding interrogatories to all class members, the Court held a discovery dispute and ordered the parties to submit proposals for an alternate course of action. (Doc. #228). The parties subsequently agreed to convert the interrogatories to a questionnaire which would not be responded to under oath. (Doc. #268, p. 3; Doc. #268-4, p. 2). Counsel for both parties jointly developed a questionnaire to send to all 992 Missouri class members inquiring about their experiences paying for customer walkouts and cash register shortages. It is disputed whether and to what extent Plaintiff's expert, Dr. Chester Hanvey, participated in the development of the questionnaire. The court approved the questionnaire, and Plaintiff's Counsel subsequently mailed the questionnaire to the class members.

Plaintiff's Counsel retained Dr. Hanvey, "to analyze the data from 195 class members [who responded to the questionnaire] to determine the frequency with which class members personally experienced 'customer walkouts' or 'cash register shortages' . . . ." (Doc. #276-2, p. 4). Defendants challenge Dr. Hanvey's September 4, 2018, report analyzing the questionnaire data and any related testimony, arguing they "violate Federal Rules of Evidence 401, 402, 403, and 702, and the legal standard for admissibility expressed in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) . . . ." (Doc. #268, p. 1).

**II.     Legal Standard**

The admission of expert testimony is governed by Federal Rule Evidence (FRE) 702. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). FRE 702 permits expert testimony "if (a) the expert's … specialized knowledge will help the trier of fact understand the evidence …; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness has applied the principles and methods reliably to the facts of the case." FRE 703 requires expert testimony to be based on "facts or data

in the case that the expert has been made aware of or personally observed." In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court redefined the standard for the admission of expert testimony. In fulfilling its "gatekeeping" role, a trial court faced with a proffer of expert testimony must determine at the outset whether the evidence "both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. The Court in *Daubert* emphasized that the inquiry required by FRE 702 is intended to be flexible. *Id.* at 594. The *Daubert* analysis applies to all expert testimony, as opposed to only "scientific" testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 135, 147 (1999).

Due to the liberalization of expert testimony admission standards signaled by *Daubert* and its progeny, and the codification of this trend by FRE 702, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citing *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (expert testimony should be admitted if it advances the trier of fact's understanding "to any degree"); *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (FRE 702 "clearly is one of admissibility rather than exclusion") (quotations omitted). As long as the expert testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded at the outset. *Id.* (citing *Daubert*, 509 U.S. at 596). "[E]xclusion of an expert's opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minnesota Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (internal citation and quotation marks omitted).

**III. Discussion**

Defendants argue Dr. Hanvey's report and related testimony are inadmissible because in analyzing questionnaire data, Dr. Hanvey did not utilize generally accepted scientific surveying methodologies. Defendants contend that (1) the questionnaire sent to class members is not a survey that can be extrapolated to the class; (2) the questionnaire was not administered by a neutral third party; (3) Dr. Hanvey did not draw a random sample of employees that is representative of the class for which a margin of error could be calculated; and (4) the results suffer from substantial non-response bias. (*See* Doc. #268).

Plaintiff refutes Defendants' argument that Dr. Hanvey did not employ generally accepted scientific methodologies in his analysis, stating that "Dr. Hanvey reviewed the questionnaire before it was finalized and incorporated changes to ensure that it was 'a valid instrument capable of generating meaningful results.'" (Doc. #276, p. 5). Plaintiff contends that (1) expert testimony based on questionnaires sent to all members of a class is admissible; (2) Defendants agreed that Plaintiff's counsel would administer the questionnaire and that expert analysis of the questionnaire responses would follow; and (3) Defendants' disagreement with Dr. Hanvey's analysis and conclusions is not a valid basis for excluding Dr. Hanvey's report and testimony. Plaintiff maintains that any concerns regarding Dr. Hanvey's methodology are best suited for cross-examination. (*See* Doc. #276).

The Court agrees with Plaintiff's position that concerns about Dr. Hanvey's methodology are best addressed on cross-examination. In his 58-page report, Dr. Hanvey described the methodology he used to analyze questionnaire data and arrive at his conclusions about "the degree to which [Defendants] . . . required employees to personally pay for the cash deficit resulting from customer walkouts or cash register shortages." (Doc. #276-2, p. 4). Dr. Hanvey

explained the steps he took to ensure the accuracy of the data, including "integrat[ing] several elements into the survey before it was sent to class members to ensure it was consistent with professional standards for collecting valid and reliable self-report data." (*Id.* at pp. 4–5). Dr. Hanvey indicated he "performed a 'quality check' of the data" and "reviewed the characteristics of the sample of survey respondents and found that the sample was sufficiently large and representative to reach conclusions about the Missouri Class [] within a reasonable degree of certainty." (*Id.* at p. 5). Dr. Hanvey explained that "[t]here are not widely agreed-upon standards" for proper sample size, and cited a standard he utilized based on the "central limit theorem." (*Id.* at p. 10). Dr. Hanvey described the steps he took and factors he applied to "assess the degree to which the sample of class members who responded to the survey was representative of the population of class members." (*Id.* at p. 11).

Further, while Defendants take great issue with Dr. Hanvey's use of questionnaire data to conduct statistical analysis, the use of questionnaires to gather data and form the basis of expert testimony in cases alleging wage violations has been approved. *See, e.g.*, *Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2009 WL 2391775, at *4 (W.D. Mo. Aug. 3, 2009) (finding that an expert's use of questionnaire data in a wage and hour case was "not unreasonable or so inherently unreliable that the questionnaire and [the expert's] testimony about it should be excluded"). While Defendants stress that in *Fast*, the Court struck an expert's opinion that it was possible to extrapolate the results of the questionnaire to the entire class, Defendants fail to clarify that the Court's decision was based solely on the expert's lack of qualifications to make such an extrapolation. *See* 2009 WL 2391775, at *6. Here, Defendants do not challenge Dr. Hanvey's qualifications.

Accordingly, the Court finds Dr. Hanvey's "testimony is the product of reliable principles and methods." FRE 702(c). Exclusion of Dr. Hanvey's testimony is improper, as his opinions are not "so fundamentally unsupported that [they] can offer no assistance to the jury." *Wood*, 112 F.3d at 309. Defendants may cross-examine Dr. Hanvey regarding his methodology and counter Dr. Hanvey's expertise with their own expert's testimony.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Exclude Testimony of Expert Witness, Chester Hanvey, and Memorandum of Law, (Doc. #268), is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 21, 2018