**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

OLIVIA COPE, on behalf of herself and all other )
similarly situated persons, known and unknown, )
                                                )
                          Plaintiff,            )
                                                )
v.                                              )      Case No. 6:16-cv-03050-SRB
                                                )
LET'S EAT OUT, INC., et al.,                    )
                                                )
                          Defendants.           )

## ORDER

Before the Court is Defendants' Motion to Decertify FLSA and Missouri Classes. (Doc.

#271). For the following reasons the motion is DENIED.

## I.    Background

Plaintiff Olivia Cope asserts a Section 216(b) collective action on behalf of all current

and tipped employees of Defendants' Buffalo Wild Wings restaurants who were paid sub-

minimum wages in the last three years in violation of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201, *et seq.* Plaintiff alleges Defendants willfully violated the FLSA by paying servers

and bartenders sub-minimum, tip-credit rates of pay, while (1) failing to inform them of the tip-

credit provisions of the FLSA; (2) regularly requiring them to perform improper types and

excessive amounts of non-tipped work; and (3) requiring them to reimburse the restaurants from

their tips for customer walkouts and cash register shortages. On July 12, 2016, this Court

conditionally certified a class for notice purposes prior to the completion of discovery based on

this Court's finding that Plaintiff had established a colorable basis for her claim that putative

class members were the victims of a single policy resulting in compensation that did not satisfy

the tip-credit provisions and minimum wage requirements of the FLSA. (Doc. #80).

Plaintiff also asserts a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of:

a.  All current and former servers and bartenders working at any of Defendants' Buffalo Wild Wings restaurants in Missouri who, at any time from February 10, 2014 until May 31, 2015, were paid sub-minimum, tip-credit rates of pay.

b.  All current and former servers and bartenders working at any of Defendants' Buffalo Wild Wings restaurants who, at any time from February 10, 2011 until May 31, 2015, were paid sub-minimum, tip-credit rates of pay.

Under the Rule 23 Class Action, Plaintiff alleges Defendants violated the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500 *et seq*., and Missouri common law by failing to pay Plaintiff and other tipped employees all earned minimum wages. Specifically, Plaintiff alleges Defendants unlawfully enforced a policy or practice of requiring tipped employees to reimburse the restaurants from their tips for customer walkouts and cash register shortages. On May 10, 2017, this Court certified the Rule 23 Class Action and designated Olivia Cope as Class Representative. Defendants now move this Court to either decertify or exclude certain individuals from both the FLSA and Rule 23 classes.

## II.  Legal Standard

### A.  FLSA Collective Action Decertification

Section 216(b) provides that a FLSA action may be brought by an employee for himself and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). "Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (internal quotations omitted), *aff'd on other grounds by Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). The Eighth Circuit has not articulated a standard for determining whether potential opt-in

plaintiffs are "similarly situated" for purposes of certification in FLSA cases. However, a majority of the district courts in the Eighth Circuit use a two-step analysis. *See, e.g., McClean v. Health Sys., Inc.*, No. 11-CV-03037-DGK, 2011 WL 6153091 (W.D. Mo. Dec. 12, 2011); *Chankin v. Tihen Commc'ns, Inc.*, No. 08-CV-196-HEA, 2009 WL 775588 (E.D. Mo. Mar. 20, 2009); *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007).

The first step in the two-step analysis is the notice stage. At this stage, "plaintiff moves for conditional certification [], wherein a class is certified for notice purposes" prior to the completion of discovery. *Davis v. Novastar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005). "At the second step of the process, the defendant may move to decertify the class. This is typically done after the close of discovery when the Court has much more information and is able to make a more informed decision." *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007) (citation omitted). "On a motion to decertify, the courts must determine whether plaintiffs are similarly situated with respect to their job requirements and pay provisions." *Fast v. Applebee's Int'l Inc.*, No. 06-4146-CV-C-NKL, 2009 WL 2391921, at *1 (W.D. Mo. Aug. 3, 2009) (citing *Grayson v. K-Mart*, 79 F.3d 1086 (11th Cir. 1996)). The court may consider three factors in making its determination: "(1) individual plaintiff's disparate factual and employment settings, (2) defenses which are individual to each plaintiff, and (3) fairness and procedural considerations." *Id.* "[M]inor differences in Plaintiffs' situations do not warrant decertification." *Id.*; *Bouaphakeo*, 765 F.3d at 796.

## B. Rule 23 Class Action Decertification

Rule 23 requires that a class action satisfy all four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Pursuant to Rule 23(a), the party seeking certification must demonstrate that the proposed class

satisfies the requirements of numerosity, commonality, typicality, and adequate representation. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations and citations omitted). Rule 23(b)(3) requires that the Court find that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is the "superior" method of adjudication of the controversy. "Once a class is certified, the Court has an ongoing duty to ensure that the class continues to be certifiable." *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-CV-04175-NKL, 2013 WL 12153518, at *2 (W.D. Mo July 8, 2013) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999)).

## III. Discussion

### A. FLSA Collective Action Claims

#### 1. Failure to Inform Employees of Tip-Credit Provisions of the FLSA

Plaintiff claims Defendants violated the FLSA by failing to inform their employees of the tip-credit provisions of the FLSA. As Plaintiff points out in her Suggestions in Opposition to Defendant's Motion to Decertify, Defendants do not address this claim in their Motion for Decertification. Plaintiff also fails to advance her argument for class certification on this claim in her Suggestions in Opposition. Defendants argue in their Reply Suggestions that according to evidence set forth by Defendants' tipped employees in 35 declarations submitted prior to step-one certification of this class, "many of Defendants' employees . . . were advised of the tip credit." (Doc. #286, p. 6).

The Court finds class certification remains proper as to the claim that Defendants failed to inform plaintiffs of the tip-credit provisions of the FLSA. While defendants typically move for decertification at the close of discovery "when the Court has much more information and is able to make a more informed decision," here, neither Plaintiff nor Defendants have presented

the Court with analysis of any new discovery as to this claim. (*Fast*, 243 F.R.D. at 363) (citation omitted). In Defendants' Suggestions in Opposition to Plaintiff's Motion for Step-One Notice, Defendants state, "[Defendants] did indeed notify Plaintiff and all other members of the class of the tip credit provision of the FLSA, whether through individual signed notices and/or through the poster that hangs in each of its restaurants." (Doc. #39, p. 18 n.22). This statement demonstrates class members experienced similar rather than "disparate factual and employment settings," in that class members all allegedly signed notices and/or worked in the presence of a poster informing them of the FLSA tip credit provision. (*Bouaphakeo*, 765 F.3d at 796). Defendants have not put forth any individualized defenses, which cuts in favor of class treatment of this claim. Further, fairness and procedural considerations weigh in favor of class treatment as to this claim, given that Defendants claim all class members were made aware of the FLSA tip credit provision in a similar manner. That being the case, it would be efficient and fair to all parties to resolve the claim on a class-wide basis.

### 2. Requirement that Employees Reimburse Restaurants for Customer Walkouts and Cash Register Shortages

Plaintiff claims Defendants violated the FLSA by enforcing a policy that required tipped employees to reimburse Defendants for customer walkouts and cash register shortages. As Plaintiff points out in her Suggestions in Opposition to Defendant's Motion to Decertify, Defendants do not address this claim in their Motion for Decertification. Plaintiff also fails to advance her argument for class certification as to this claim in her Suggestions in Opposition. Defendants argue in their Reply Suggestions that it "would be improper to maintain certification of an FLSA class based on customer walkouts and cash register shortages[] when evidence in the record . . . indicates that many [o]pt-[i]n [p]laintiffs likely either never experienced such an event or never had to pay for it out of their tips." (Doc. #286, p. 6). Defendants argue an

individualized inquiry would be required to determine which class members experienced reimbursing Defendants for customer walkouts or cash register shortages. Defendants failed to analyze decertification of this claim utilizing the three factors laid out above.

The Court finds class certification remains proper as to the claim that Defendants unlawfully enforced a policy that required tipped employees to reimburse Defendants for customer walkouts and cash register shortages. Even if some opt-in plaintiffs either never experienced or were never required to reimburse Defendants for a customer walkout or cash register shortage, all opt-in plaintiffs were subjected to the same policy in the course of their employment. Differences in injury flowing from enforcement of the policy is not a proper defense or basis for decertification, as differences in injury do not disprove the claim that Defendants enforced an FLSA-violating policy to which all class members were subjected. Although the Court recognizes that this action will necessitate a degree of individual inquiry into the harm suffered by class members, procedural considerations weigh in favor of class treatment as to this claim given that liability will turn on common evidence relating to the legality of Defendants' single policy. Further, fairness considerations warrant plaintiffs the right to bring their claims collectively, since many could not pursue their claims individually given the relatively small value of their individual claims.

### 3. Requirement that Employees Perform Excessive Amounts and Improper Types of Non-Tipped Work

#### a. Dual Jobs Under the Fair Labor Standards Act

Plaintiff claims Defendants violated the FLSA by requiring tipped employees to perform excessive amounts and improper types of non-tipped work. The FLSA permits employers to pay "tipped employees," defined as employees "engaged in an occupation in which [they] customarily and regularly receive[] more than $30 a month in tips," sub-minimum wage by

taking a tip credit toward the tipped employees' wages. 29 U.S.C. § 203(t); C.F.R. § 531.56(a)-

(d). An employee may work "dual jobs" for an employer, in both a tipped and a non-tipped

capacity. 29 C.F.R. § 531.56(e). Specifically, subsection "e" states:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such *related duties* in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

*Id.* (emphasis added).

At the time Plaintiff filed this case in 2016, and throughout the time Defendants allegedly

violated the FLSA, section 30d00(f)[1] of the Department of Labor's ("DOL") Field Operations

Handbook ("FOH") interpreted 29 C.F.R. § 531.56(e) ("Dual Jobs Regulation") to mean that an

employer is permitted to "take a tip credit for time spent in *duties related to the tipped*

*occupation* of an employee, even though such duties are not by themselves directed toward

producing tips, provided such related duties are incidental to the regular duties of the tipped

employees and are generally assigned to the tipped employee." 30d00(f)(2) (emphasis added).

The FOH listed examples of a server's related duties, including "preparatory or closing activities,

roll[ing] silverware and fill[ing] salt and pepper shakers while the restaurant is open, clean[ing]

and set[ting] tables, mak[ing] coffee, and occasionally wash[ing] dishes or glasses. *Id.* The

FOH interpreted the "part of her time" and "occasionally" language of the Dual Jobs Regulation

---

[1] Section 30d00(f) of the FOH was formerly labeled section 30d00(e). This Order will refer to the section as 30d00(f).

as meaning that "where the facts indicate that tipped employees spend a substantial amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such *related* duties, no tip credit may be taken for the time spent in those duties." 30d00(f)(3). This interpretation became known as the "80/20 rule."

The FOH clarified that "an employer may not take a tip credit for the time that a tipped employee spends on work that is *not related* to the tipped occupation." 30d00(f)(4). The FOH provided examples of work that is unrelated to the tipped occupation of a server, which included "maintenance work (e.g., cleaning bathrooms and washing windows)." *Id.* The FOH stated that because such maintenance work is unrelated to the tipped occupation of serving, "the employee is effectively employed in dual jobs." *Id.*

On November 8, 2018, the DOL issued Opinion Letter FLSA2018-27 (the "Opinion Letter"), which sought to clarify FOH section 30d00(f). The Opinion Letter, which was a reissuance of Opinion Letter FLSA2009-23,[2] purportedly did away with the 80/20 rule, stating that "[no] limitation shall be placed on the amount of duties [related to a tip-producing occupation] that may be performed . . . ." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Nov. 8, 2018). The Opinion Letter also directed readers to view the "[d]uties listed as core or supplemental for the appropriate tip-producing occupation in the in the [sic] Tasks section of the Details report in the Occupational Information Network (O*NET) . . . or 29 C.F.R. § 531.56(e), [which] shall be considered directly related to the tip-producing duties of that occupation." *Id.* The Opinion Letter stated that "[e]mployers may not take a tip credit for time spent performing any tasks not contained in the O*NET task list . . . however, [] some of the

---

[2] Opinion Letter FLSA2009-23, dated January 16, 2009, was promptly withdrawn by the DOL on March 2, 2009.

time spent by a tipped employee performing tasks that are not listed in O*NET may be subject to the de minimis rule . . . ." *Id.* The Opinion Letter instructed that "[t]hese principles supersede our statements in FOH § 30d00(e)," and that a "revised FOH statement will be forthcoming." *Id.* At this point, the DOL has not issued a new or revised FOH, so this Court is left with two conflicting interpretive documents from the DOL.

### b. Deference to Opinion Letter FLSA2018-27

As a general rule, an agency's interpretation of its own ambiguous regulation is controlling unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal citations and quotations omitted). *Auer* deference is "unwarranted when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (quoting *Auer*, 519 U.S. at 462). "This might occur when the agency's interpretation conflicts with a prior interpretation." *Id.* at 155 (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994). To be worthy of *Auer* deference, an agency's interpretation must not result in "unfair surprise" to the litigating parties. *Id.* at 156–159 ("[A]gencies should provide . . . fair warning of the conduct [a regulation] prohibits or requires.") (internal quotations and citations omitted).

Where *Auer* deference to an agency interpretation is not warranted, the Court may afford the interpretation "*Skidmore* deference," which is "deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]'" *Christopher*, 567 U.S. at 159 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Under *Skidmore*, "interpretations contained in formats such as

opinion letters are 'entitled to respect,' . . . but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore*, 323 U.S. at 140).

Defendants argue the Opinion Letter applies retroactively, but that "the DOL's guidance interpreting the 'dual jobs' regulation has been incoherent, untethered to the statutory and regulatory text, and internally inconsistent," and therefore, the opinion letter should not be given *Auer* deference by this Court. (Doc. #296, p. 2). Defendants argue the Court should follow the plain language of the FLSA and ignore the Dual Jobs Regulation, referring the Court to a brief filed in a separate Ninth Circuit case that detailed an argument that the Dual Jobs Regulation is not worthy of *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 837–38 (1984). Defendants argue alternatively that if the Court defers to the DOL's interpretations, it must defer to the Opinion Letter and not former guidance of the "now-withdrawn FOH provision that the DOL itself says was an incorrect interpretation of the law." Plaintiff argues the Opinion Letter only applies prospectively and therefore does not apply to this case. Plaintiff argues alternatively that even if the Opinion Letter applies retroactively, the Court should decline to grant the Opinion Letter *Auer* deference because "the sudden change in the DOL's position results in 'unfair surprise.'" (Doc. #296, p. 1). Plaintiff argues "[t]his means the Court is free to independently interpret" the Dual Jobs Regulation. *Id.*

The Court finds Opinion Letter FLSA2018-27 is currently unworthy of *Auer* deference in this case. As both Plaintiff and Defendants recognize in their briefing, the DOL's interpretation of the Dual Jobs Regulation as set forth in the Opinion Letter directly conflicts with its prior guidance in the FOH implementing the 80/20 rule pertaining to "related duties." With the exception of the nearly identical opinion letter issued and swiftly withdrawn in 2009, the DOL

has consistently interpreted the Dual Jobs Regulation as limiting an employer's ability to require its tipped employees to participate in non-tip-producing related tasks to 20% of the hours worked in the tipped occupation in a workweek. As Plaintiff notes, the DOL reaffirmed its 80/20 rule interpretation at various instances over this time period. Such instances include the DOL's submission of amicus briefs before the Eighth Circuit Court of Appeals[3], the Ninth Circuit Court of Appeals[4], and the Tenth Circuit Court of Appeals[5], and the republishing of its interpretation in the 2016 edits to the FOH. To give *Auer* deference to an Opinion Letter pronouncing the sudden forthright withdrawal of such longstanding guidance would result in "unfair surprise" to Plaintiff, who brought this lawsuit almost three years ago when the time-honored 80/20 rule interpretation was understood to be the law. It would also constitute "unfair surprise" to class members who were subjected to the allegedly unlawful restaurant policies and procedures that were in place at that time. Furthermore, during the entirety of the class period in this case, the DOL's sole interpretation of the Dual Jobs Regulation was that which was set forth in the FOH.

For similar reasons, the Court also finds the DOL's interpretation set forth in the Opinion Letter unpersuasive and unworthy of the lesser *Skidmore* deference. The abrupt issuance of an Opinion Letter purporting to change the DOL's interpretation after years of consistently construing the Dual Jobs Regulation as limited by the 80/20 rule does not persuade this Court to apply a new interpretation to this litigation. Aside from expressing the DOL's desire to clarify the FOH sections addressing the tip credit, the DOL does not offer reasoning or evidence of any thorough consideration for reversing course. Accordingly, the Court finds the Opinion Letter unpersuasive and unworthy of *Skidmore* deference.

---

[3] *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011).
[4] *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 626 (9th Cir. 2018).
[5] *See Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1282 (10th Cir. 2017).

Because the Court finds the Opinion Letter to be unworthy of deference, the Court need not address whether the Opinion Letter applies to pending litigation. Without interpretative guidance from the Opinion Letter, the Court must determine whether to follow Eighth Circuit precedent as set forth in *Fast,* 638 F.3d at 872, which held the DOL's interpretation of the Dual Jobs Regulation contained in the FOH was entitled to *Auer* deference and the 80/20 rule was a reasonable interpretation of the Dual Jobs Regulation, or independently interpret the ambiguous Dual Jobs Regulation. While the Opinion Letter states that "[t]hese principles supersede our statements in FOH § [30d00(f)]" and "[a] revised FOH statement will be forthcoming," as of the date of the issuance of this Order, the FOH has not been revised.[6] For this reason, the Eighth Circuit's decision in *Fast* remains controlling law and binding on this Court. However, even if the 80/20 rule provision in the FOH is ultimately rescinded or otherwise revised, the Court agrees with the Eighth Circuit's rationale for finding that the 80/20 rule is a reasonable interpretation of the Dual Jobs Regulation:

> "By using the terms "part of [the] time" and "occasionally," the regulation clearly places a temporal limit on the amount of related duties an employee can perform and still be considered to be engaged in the tip-producing occupation. . . . [T]he DOL's regulations consistently place temporal limits on regulations dealing with the term "occasional[]" . . . . and the DOL has used a 20 percent threshold to [impose temporal limits] in various contexts within the FLSA. . . . The 20 percent threshold . . . is a reasonable interpretation of the terms "part of [the] time" and "occasionally [.]"

*Fast*, 638 F.3d at 879–81.

Defendants argue that the Court should not afford *Chevron* deference to the Dual Jobs Regulation because the Dual Jobs Regulation "was not subject to notice and comment" and "the final rule was entirely different from the proposed rule." (Doc. #296, p. 16). Defendants do not

---

[6] *See* U.S. Dep't of Labor, Wage & Hour Div.: Field Operations Handbook, https://www.dol.gov/whd/FOH/ (last updated Aug. 31, 2017).

flesh out this argument in their briefing; rather, Defendants direct the Court to "Appellee's Brief filed in *Llanos v. P.F. Chang's China Bistro, Inc.*, Case No. 16-15003 in the Ninth Circuit Court of Appeals." *Id.* Defendants failed to cite in their briefing the portion of the Ninth Circuit's decision pertaining to this argument, with which this Court agrees:

> Defendants first contend that the dual jobs regulation is not entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We disagree.
>
> As an initial matter, it is beyond question that the DOL promulgated the dual jobs regulation, 29 C.F.R. § 531.56, in the exercise of its congressionally delegated authority. *See United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Congress amended the FLSA in 1966 by defining "tipped employee" for the first time, *see* 29 U.S.C. § 203(t), and adding a formula for calculating the wage of a tipped employee, *see id.* § 203(m). *See* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 101, 80 Stat. 830, 830. The 1966 Amendments authorized the Secretary of Labor "to promulgate necessary rules, regulations, or orders with regard to the amendments made by this Act." *Id.* at § 603, 80 Stat. at 844. Shortly thereafter, the DOL issued a notice of proposed rulemaking aimed at "expand[ing] 29 CFR Part 531 to make provisions responsive" to the "Fair Labor Standards Amendments of 1966," specifically the newly amended sections 203(m) and 203(t) regarding tipped employees. 32 Fed. Reg. 222, 222 (Jan. 10, 1967). This process eventually produced the dual jobs regulation, 29 C.F.R. § 531.56(e). *See* 32 Fed. Reg. 13,575 (Sept. 27, 1967).
>
> Defendants nonetheless urge us to conclude that Chevron deference is inapplicable in this instance because the dual jobs regulation was promulgated without adequate notice and an opportunity to comment. This argument, however, is decades too late. *See Perez-Guzman v. Lynch*, 835 F.3d 1066, 1077 (9th Cir. 2016), cert. denied, —— U.S. ——, 138 S.Ct. 737, 199 L.Ed.2d 604 (2018) ("Procedural challenges to agency rules under the Administrative Procedure Act are subject to the general six-year limitations period in the U.S. Code."); *see also* 28 U.S.C. § 2401(a). . . . [A]s a matter of law, such procedural challenges to the regulation here are indisputably untimely and beyond our scope of review. . . .

*Marsh*, 905 F.3d at 621.

In sum, notwithstanding the DOL's issuance of the Opinion Letter and any forthcoming revision of the FOH, the Court finds the Dual Jobs Regulation still provides a basis for Plaintiff's claim that Defendants violated the FLSA by regularly requiring

Plaintiff and class members to perform improper types and excessive amounts of non-tipped work. To the extent the law surrounding, and interpretation of, the Dual Jobs Regulation continues to develop in advance of trial, the Court will entertain further argument from the parties when crafting a jury instruction.

### c. Decertification Analysis

Defendants do not conduct an analysis using the three factors laid out above. Instead, Defendants indicate that three of the four individuals it deposed who consented to join the FLSA collective action signed declarations prior to conditional, or "step-one," certification of this class, representing that they spent 20% or less time on non-tipped sidework, and then made inconsistent statements under oath during deposition. Defendants also point out that additional individuals who opted in to the class, whom Defendants did not depose, submitted declarations indicating they spent 20% or less time on non-tipped sidework. Defendants also argue, as they argued in opposing step-one certification, that the declarations "show a wide divergence in the amount and type of side work that servers and bartenders were asked to complete." (Doc. #286, p. 1).

Plaintiff argues that class members are similarly situated in terms of factual and employment settings because "Defendants' commonly owned restaurants distribute the same policies to newly hired employees, use common human resource employees, and employ common regional managers who get the same instructions about enforcing policies across restaurants." (Doc. #275, p. 13). Plaintiffs argue that Defendants have only identified individualized defenses for three opt-in plaintiffs who testified that their declarations were inaccurate, and that even then, the declaration process was deficient and therefore should not be

relied upon for purposes of this motion.[7]  Plaintiffs contend that fairness and procedural considerations favor certification because "the FLSA is a remedial statute that should be interpreted in favor of employee coverage, yet many collective action members would be foreclosed from pursuing their claims on an individual basis because of their relatively small value if decertification were granted."  (Doc. #275, p. 13) (citing Fast v. Applebee's Int'l, Inc., No. 06-4146-CV-C-NKL, 2009 WL 2391921, at *2 (W.D. Mo. Aug. 3, 2009)).

The Court finds class certification remains proper as to the claim that Defendants violated the FLSA by regularly requiring Plaintiff and class members to perform improper types and excessive amounts of non-tipped work.  Plaintiff and class members are similarly situated in terms of factual and employment settings.  According to declarations of former managers who worked at various restaurant locations, Defendants require servers and bartenders [across their restaurants] to perform: opening duties, shift change "outs" or cut work, closing duties, intensive cleaning duties, and other ongoing "side work" duties performed during the course of the shift in between serving customers.  According to declarations of former managers, servers, and bartenders, such duties range from brewing tea, stocking server stations, and slicing lemons, to dusting, sweeping, cleaning bathrooms, and taking out the trash.  (See Doc. #36, pp. 11–14). Former managers state that across Defendants' restaurants, bartenders "spent 30 to 60 percent of their shifts performing the non-tipped duties" and servers "typically spent between 25 and 45

---

[7] Specifically, Plaintiff argues deposition testimony revealed that: (1) opt-in plaintiffs were interviewed during their shifts at Defendants' restaurants; (2) opt-in plaintiffs were instructed by a manager to speak with Defendants' counsel; (3) opt-in plaintiffs were unaware that the interviewer represented Defendants in a lawsuit; (4) the interviewer failed to define the meaning of crucial terms; (5) the "20% or less" figure was suggested to opt-in plaintiffs or inserted into their declarations without their knowledge or consent; (6) opt-in plaintiffs did not review, or remember reading reviewing, the declarations prepared by Defendants' counsel before signing them; (7) opt-in plaintiffs did not recall reviewing the Notice of Rights and Consent to Interview and the contents were not explained to them.  (Doc. #275, pp. 7–10).

percent of their shifts performing the non-tipped duties[.]" (Doc. #36-1, p. 15). Former managers state that throughout Defendants' restaurants, such tipped employees were paid sub-minimum hourly wages for performing such non-tipped duties. Moreover, according to deposition testimony from Defendants' corporate representatives, Defendants utilized the same human resources department, distributed the same packet of policies to new hires, and employed regional managers who receive the same instructions about how to carry out these policies, across restaurants. (Doc. #275, p. 13).

While each server and each bartender may not perform the same duties for the same amount of time every day, Defendants employed the same policies and procedures across restaurants that required class members to complete similar job duties, some apparently related to the job of serving or bartending and some apparently unrelated, for similar amounts of time during each shift at tip-credit rates of pay. The declarations of Defendants' former managers and depositions of Defendants' corporate representatives indicate "that using tipped employees to [perform dual jobs] was not an isolated, rare, or random occurrence, but rather the general practice at [Defendants'] restaurants across the various locations and throughout the class period." *Driver v. AppleIllinois, LLC*, No. 06 C 6149, 2013 WL 5818899, at *10 (N.D. Ill. Oct. 29, 2013). That the specific duties servers and bartenders completed and the amount of time it took such employees to complete those tasks varied based upon need and shifts does not defeat class certification because the policies and procedures Defendants subjected class members to were the same or similar across restaurant locations. *See, e.g., id.* at *9 ("That some tipped employees performed one or more duties that other tipped employees did not perform does not change the conclusion that [Defendants] had a policy and practice of using tipped employees to perform work for which [Defendants] should have paid them at the minimum wage. . . . The fact

that [Defendants'] employees performed different tasks in their dual jobs did not defeat certification . . . and does not require decertification now."); *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018, 2007 WL 2780504, at *4 (D.Minn. Sept. 24, 2007) (denying Defendants' motion for decertification, stating "[Defendant] exaggerates the factual differences among employees on various shifts and in different departments. If one zooms in close enough on anything, differences will abound; even for a single employee doing a single job, the amount of time that she spends [on preparatory work at or before the start of her shift] on Monday will differ, at least minutely, from the amount of time that she spends [on such preparatory work] on Tuesday.).""

While Defendants argue individuals who opted in to the class even after submitting declarations stating they spent 20% or less time on non-tipped work should be ineligible for class membership, Plaintiff claims the declaration process Defendants used was deficient and resulted in inaccurate results. Defendants deposed three of these individuals, and their deposition testimony corroborates Plaintiff's claim that the employees' declaration testimony was inaccurate. The Court cannot decertify the class or "disqualify" certain members from the class when such members claim their declaration testimony was recorded inaccurately or that the declaration process was otherwise faulty and captured inaccurate representations of their experiences. The Court also finds that fairness and procedural considerations weigh in favor of maintaining class certification considering class members were commonly subjected to Defendants' policies and procedures allegedly requiring them to perform unrelated duties for sub-minimum wages and perform related duties for excessive amounts of time in violation of the FLSA. If affected employees are not permitted to proceed as a class, the monetary value of their claims may not be large enough to enable each employee to proceed with their claims

individually.  It follows that class treatment in this circumstance serves to implement the policy of construing the FLSA liberally, "in favor of coverage."  *Kelly v. Alamo*, 964, F.2d 747 (8th Cir. 1992).

### B.  Rule 23 Class Action

Defendants request that the Court decertify the state-law class certified under Fed. R. Civ. P. Rule 23, or in the alternative, "limit such classes to include only the individuals who responded to the Court-approved questionnaire indicating that they were required to pay for customer walkouts or cash register shortages from tips during the class period[.]"  (Doc. #271, p. 3).  Defendants support their request with their interpretation of the results from a questionnaire Defendants sent to 993 class members seeking the class members' experiences with customer walkouts and cash register shortages.  Specifically, Defendants argue that because they received a low response rate to the survey, and because around 30% of respondents indicated they either could not remember or never had to pay for a customer walkout or cash register shortage, Plaintiff's claims are not typical of the claims of the class, and that individual questions predominate over common questions.

Plaintiff argues that the questionnaire results do not defeat typicality or predominance. Plaintiff contends the data demonstrates that 95% of survey respondents who reported experiencing a customer walkout or cash register shortage indicated they were required to pay the restaurant for it, which demonstrates that Defendants enforced a common illegal policy. Plaintiff stresses that the fact that some tipped employees did not experience or have to pay for a customer walkout or cash register shortage is irrelevant to class certification; rather, that fact goes to damages.  Plaintiff asserts that at best, the class definition should be modified to include

only "Defendants' Missouri servers and bartenders who paid for customer walkouts or cash register shortages." (Doc. #275, p. 6).

Missouri law does not specifically contemplate "decertification" of a class certified under Rule 23. Nonetheless, the Court finds the class "continues to be certifiable." *Nobles*, 2013 WL 12153518, at *2 (internal citation omitted).

### 1. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982)). The claims of the entire class need not be identical, but the class representatives must generally "possess the same interest and suffer the same injury" as the unnamed class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Plaintiff Cope's claims remain typical of the claims of the class. Neither Plaintiff's nor the class members' claims have changed since the Court issued its Order certifying class. The allegation that Defendants unlawfully enforced a policy or practice of requiring tipped employees to reimburse the restaurants from their tips from customer walkouts or cash register shortages remain the same. The Court is not persuaded by Defendants' attempt to characterize Plaintiff's and the class members' claim as dependent on whether an individual experienced a customer walkout or cash register shortage. As the Court ruled in its Order certifying class, the fact that some employees did not experience a customer walkout or cash shortage does not defeat class certification, since a common policy or practice would expose the class as a whole to damages. *Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1137 (9th Cir. 2016).

## 2. Predominance

Rule 23(b)(3) does not require a showing that questions common to the class that predominate will be answered, on the merits, in favor of the class. *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Instead, the requirement that common questions predominate over individual questions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "[T]he court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a *prima facie* case for the class." *Id.*

The Court's reasoning behind the finding that questions of law or common facts predominate, as explained in the Court's Order certifying class, remains the same. The questions of law and fact relating to Defendants' Guest Payment Policy, and whether Defendants' maintenance and enforcement of the same violated the Missouri Minimum Wage Act and Missouri common law, are common questions that predominate over questions affecting individual members. (Doc. #172, p. 17). Although the Court recognizes that this action will necessitate a degree of individual inquiries into the harm suffered by class members, common issues relating to Defendants' adoption, implementation, and enforcement of the Guest Payment Policy still predominate this action. *Id.* A low response rate to the questionnaire or the reality that some respondents to the questionnaire reported never having to reimburse Defendants under the Guest Payment Policy does not change this analysis. As stated above and in the class certification Order, the inquiry into whether class members experienced having to reimburse

Defendants for a customer walkout or cash shortage in accordance with a common policy goes to damages and not class certification.

## IV. Conclusion

Accordingly, Defendants' Motion to Decertify FLSA and Missouri Classes (Doc. #271) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: <u>January 2, 2019</u>